UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIELLE L. SPENCE,

       Plaintiff,

v.                      Case No. 8:12-cv-694-T-33MAP

BHTT ENTERTAINMENT, INC.,

       Defendant.
_____/

**ORDER**

This cause comes before the Court in consideration of
Defendant BHTT Entertainment, Inc.'s Dispositive Motion for
Summary Judgment (Doc. # 26), filed on May 20, 2013.
Plaintiff Danielle Spence filed a response in opposition to
the Motion (Doc. # 32) on June 21, 2013. For the reasons
that follow, the Motion is granted.

**I.   Background**

Beginning in June of 2010 and continuing through March
of 2011, Spence worked as a hostess in BHTT's Tampa
restaurant. (Spence Dep. Doc. # 32-3 at 3, 10). Spence,
who identifies herself as a black female (Doc. # 1 at 1),
claims that she "was treated differently from other
similarly situated white employees with respect to the

terms, conditions, and privileges of employment" at BHTT. (Id. at 6).

Over the course of Spence's employment with BHTT, BHTT issued to Spence multiple disciplinary reports relating to her unexcused or excessive absences and tardiness. (Reports Doc. ## 26-7 at 7-11; 26-8 at 1). The first such disciplinary report, dated August 2, 2010, explains that Spence "could not show up for her shift on Sunday [at 4:00 p.m.]. Called [at] 3:30 and [she] said she couldn't cover it or get a ride." (Report Doc. # 26-7 at 7). The second report, dated January 29, 2011, notes that Spence was a "[no call/no show] for her shift. Then [she] lied and said [a supervisor] gave her [the day] off. She is off the schedule until Scott[, the manager,] returns." (Id. at 8). The third report, dated February 18, 2011, explains: "You have [had] numerous chances to correct this behavior. We understand that things happen occasionally, but we need all of our team members here on time and ready to work. A courtesy call is nice, but does not excuse an absence or tardiness. This will be your last written warning, next time will result in termination." (Id. at 10). Spence's signature appears on each of the three reports in acknowledgment of receipt. (Id. at 7, 9, 11).

One final report, dated "04/2011," indicates "termination" as the consequence for "unexcused or excessive absences/tardiness." (Report Doc. # 26-8 at 1). The report explains that Spence "left before her shift was over after being told by a manager she could not leave yet. This left the front door unattended late at night during business hours." (Id.). Although signed by BHTT manager Scott Carlsen, this report remains unsigned by Spence. (Id. at 2). Carlsen recalls that, the day after Spence left the door unattended during business hours, "[w]e sat down and I showed her the documentation that we had [ ], two final warnings, and I said, 'Danielle, if you were in my position what would you do?' And she said, 'I probably shouldn't work here. I'm done.' And she got up and walked away." (Carlsen Dep. Doc. # 26-12 at 6). In accordance with this testimony, Carlsen clarifies that, although the April 2011 disciplinary report was marked "termination," Carlsen did not fire Spence. (Id. at 8).

Spence, however, frames these disciplinary events differently. According to Spence, she received harsher disciplinary treatment than other BHTT employees because of her race. (Spence Dep. Doc. # 26-1 at 3; EEOC Charge Doc. # 34-1). Spence claims that, upon receiving at least one

3

of her disciplinary reports, she signed the form only because she "didn't know what else to do" and because she was not "able to get any feedback from [her] managers." (Spence Dep. Doc. # 32-3 at 4). Spence also maintains, contrary to Carlsen's testimony, that she was terminated by BHTT after she left the door unattended in late March of 2011. (Spence Dep. Doc. # 26-4 at 2-4).

However, Spence does not dispute (1) that the disciplinary report dated August 2, 2010, was justified (Doc. # 32 at 5); (2) that Spence was indeed absent from work on January 29, 2011, although she claims to have been given permission to take the day off[1] (Spence Dep. Doc. # 32-3 at 5); (3) that Spence left "a couple minutes" before the end of her shift in late March of 2011 (Spence Dep. Doc. # 26-4 at 3); and (4) that, during her employment at BHTT, she "had the write ups [described above]," and she "was not on time once or twice." (Id. at 10).

On April 21, 2011, Spence filed a Charge of Discrimination with the EEOC. (EEOC Charge Doc. # 34-1 at 1). Within the Charge, Spence alleged the following facts:

---

[1] Although Spence maintains that she was permitted by a supervisor to take the day off, Spence does not claim that her supervisor's alleged post hoc denial of permission was related to her race. (Spence Dep. Doc. # 26-3 at 4-5).

4

> I, Danielle L. Spence (African-American), was
> employed by Respondent from June 14, 2010,
> through March 27, 2011, as a Hostess. I was
> given January 29, 2011, off by[ ] Paul (LNU)
> (Hispanic), Supervisor. This was a day of
> festivities around the Tampa area, therefore,
> employees who did not have the day off took off
> from work, I was the only one that was
> disciplined, sent home for a week and had her
> hours cut. Around March 15, 2011, I picked up a
> co-worker because she was having car problems, we
> both arrived late, I was the only one
> disciplined. I expressed my interest to become a
> server (a promotion), however, when a position
> became available it was given to a co-worker with
> less seniority. All the employees mentioned
> above are Caucasians. . . .
>
> I clocked out five minutes early on March 25,
> 2011, and I was fired by Aaron (LNU) (Caucasian),
> Supervisor, this was a common practice by all the
> Hostesses but I was singled out for disparate
> treatment by Respondent because I was the only
> African-American employed by Respondent.

(Id.).

On April 2, 2012, Spence filed a single-count Complaint alleging that BHTT had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., by discriminating against her on the basis of race. (Doc. # 1 at 6). BHTT filed the instant Motion for Summary Judgment on May 20, 2013 (Doc. # 26), and Spence filed a response in opposition to the Motion on June 21, 2013 (Doc. # 32). The Court has carefully reviewed the Motion, the response, and is otherwise fully advised in the premises.

## II.  **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)).  A fact is material if it may affect the outcome of the suit under the governing law.  Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden,

the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. <u>Samples ex rel. Samples v. City of Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing <u>Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau</u>, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981), <u>cert. denied</u>, 456 U.S. 1010 (1982).

III. **Discussion**

"In order to establish a case under Title VII, a plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence, or statistical evidence." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Spence presents no statistical evidence of discriminatory intent; the Court will evaluate the existence of direct and circumstantial evidence below.

A.    **Direct Evidence**

"Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact in issue without inference or presumption.  Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of [a protected characteristic] constitute direct evidence of discrimination." Tippie v. Spacelabs Med., Inc., 180 F. App'x 51, 54 (11th Cir. 2006) (quoting Bass v. Bd. of Cnty. Comm'rs, Orange Cnty., Fla., 256 F.3d 1095, 1105 (11th Cir. 2001)).

In the present case, Spence accuses Aaron Sturgis, a manager at BHTT's Tampa location (Sturgis Dec. Doc. # 26-10

at 2),[2] of making a race-related comment during Spence's employment as a BHTT hostess. Specifically, Spence testified as follows:

Q:   And what instances were they?

A:   Aaron was just -- instances where I felt with Aaron specifically?

Q:   Uh-hum.

A:   I'd just say just, like, different times throughout the restaurant. Just, like, if I asked to do different little things, he would turn me down or say no or just be very nasty with me. And I would just talk about -- talked about it to the other hostesses, how I felt. Because it bothered me. It wasn't pleasant.

Q:   What types of things would he say no to?

A:   Well, for instance, this one time we were all hosting. It was really busy in the front. And we needed food runners. And, like, we're all together. And sometimes they would say what -- like, "Who wants to go back and run food?" And I asked Aaron if I could go back and run food. And he said

_____

[2] In Spence's response to the Motion for Summary Judgment, Spence "object[s] to any reference to the Declarations of Scott Carlsen and Aaron Sturgis being admitted in this matter because Plaintiff's counsel was not provided with these Declarations [before the filing of the Summary Judgment Motion]." (Doc. # 32 at 2). However, Spence offers no authority for the proposition that a declaration by a known witness must be published to opposing counsel before being filed on the record in support of a summary judgment motion. Spence has provided no other grounds for striking this evidence and has not filed a motion requesting this relief. Thus, the Court will consider the relevant declarations as appropriate herein.

> it in a joking way, but I didn't feel it was
> joking.  He's like, "No."  Or, he's, like,
> "Yeah you can go.  Some can go."  But he
> was, like, "No.  You can't go."  He was,
> like, "Because you're black."

(Spence Dep. Doc. # 26-1 at 6).  However, the Court notes
that, "[t]o amount to direct evidence, a statement must:
(1) be made by a decisionmaker; (2) specifically relate to
the challenged employment decision; and (3) reveal
blatantly discriminatory animus.  Chambers v. Walt Disney
Co., 132 F. Supp. 2d 1356, 1364 (M.D. Fla. 2001).

BHTT argues that Sturgis's comment does not amount to
direct evidence of discrimination because Sturgis did not
have authority to promote Spence or terminate Spence's
employment.  (Doc. # 26 at 8-9).  The Court agrees.
Because "[d]irect evidence is evidence that establishes the
existence of discriminatory intent behind the employment
decision without any inference or presumption, . . .
remarks by non-decisionmakers or remarks unrelated to the
decisionmaking process itself are not direct evidence of
discrimination."  Standard v. A.B.E.L. Servs., Inc., 161
F.3d 1318, 1330 (11th Cir. 1998).

In this case, Spence has produced no evidence
demonstrating that Sturgis was a decisionmaker with regard
to the promotion or termination of BHTT employees.  To the

contrary, Scott Carlsen, the director of operations and formerly the general manager of BHTT's Tampa location, provided a sworn statement declaring that, "[a]s a General Manager of the Tampa location [during the time that Spence worked for BHTT], I was the only person working on-location with the authority to hire, fire or promote employees." (Carlsen Dec. Doc. # 26-11 at 2). Because Spence does not dispute that Carlsen was the sole decisionmaker, statements from other BHTT employees do not constitute direct evidence of discrimination. See Kincaid v. Bd. of Trs., 188 F. App'x 810, 816 (11th Cir. 2006).

Furthermore, Sturgis's allegedly discriminatory statement specifically relates only to Spence's claim that she was wrongfully denied promotion. Because Sturgis's statement does not relate to the other challenged employment decisions in this case (namely, Spence's claims that she was wrongfully disciplined and ultimately terminated), the fact that Sturgis lacked the authority to promote Spence prevents his statement from amounting to direct evidence of discrimination in this case.

B.  **Circumstantial Evidence**

Having determined that Spence has produced no direct evidence of discrimination, the Court now proceeds to

11

evaluate the circumstantial evidence presented. In analyzing allegations supported by circumstantial evidence under Title VII, the Court follows the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. See Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387 (11th Cir. 1998). Under the McDonnell Douglas framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. McDonnell Douglas, 411 U.S. at 802-03. Once the plaintiff has established a prima facie case, the burden of proof shifts to the defendant. Id.; Dickinson v. Springhill Hosps., Inc., 187 F. App'x 937, 939 (11th Cir. 2006).

To rebut the presumption of discrimination created by a plaintiff's prima facie case, the defendant must provide "legitimate, nondiscriminatory reason[s]" for the employment action taken against the plaintiff. Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981); Standard, 161 F.3d at 1331. However, "[t]his is a burden of production, not persuasion." Standard, 161 F.3d at 1331. A defendant "must merely produce evidence that could

allow a rational fact finder to conclude" its actions were not motivated by discriminatory animus.  Id.

If the defendant produces such evidence, the burden shifts again to the plaintiff.  McDonnell Douglas, 411 U.S. at 802-03.  The plaintiff then "has the opportunity to come forward with evidence, including the previously produced evidence establishing [her] prima facie case, sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997).

In the instant case, the Court need not employ this burden-shifting analysis because Spence has failed to establish a prima facie case of discrimination.  "To make out a prima facie case of racial discrimination a plaintiff must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably."  Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008).

In the instant case, Spence has failed to establish a prima facie case because she has not shown that similarly situated employees of other races were treated more

favorably.  "To show that employees are similarly situated, the plaintiff must show that the 'employees are similarly situated in all relevant respects . . . .  In determining whether employees are similarly situated . . . it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways."  Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003).  "[A] comparator must be 'nearly identical' to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer."  Dickinson v. Springhill Hosps., Inc., 187 F. App'x 937, 939 (11th Cir. 2006) (quoting Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004)).

In response to the Motion for Summary Judgment, Spence attempts to compare her treatment to that of other, similarly situated employees.  For instance, Spence claims that three white employees "also took off on January 29, 2011, without permission," and that these other employees, like Spence, were "listed as 'no-call/no-show,' taken off the schedule[,] and sent home by Aaron Sturgis, until such time that they spoke with the General Manager, Scott Carlsen."  (Doc. # 32 at 3).  However, Spence additionally claims that she "was the only one who had to pick up shifts

14

after" (Spence Dep. Doc. # 32-3 at 7), whereas the other three employees, after meeting with Carlsen, were each returned to their regular shifts. (Doc. # 32 at 3). However, Spence herself admits that she is unsure of exactly which employees were absent on January 29, 2011:

> Q:   As to Gasparilla, why do you believe that you were being treated differently because of your race for the writeup for Gasparilla?
>
> A:   Well, I was the only one who had to pick up shifts after.  And no one else got the permission to be off that day.  So . . .
>
> Q:   How do you know that?
>
> A:   Just from word of -- just from knowing.
>
> Q:   From talking to the other girls?
>
> A:   Yeah.  I basically just know about myself; that I was given the day off.  And just by talking to the other girls, one quit.  I think we talked about.  And another one -- actually, I think it was another hostess that didn't show up that day.  And I think it was Dachi, or something like that.  At the time, I don't know if she stayed on the schedule or not.  But I just know I was taken off the schedule and I had to pick up shifts.

(Spence Dep. Doc. # 32-3 at 7-8).  Spence also cites to the depositions of Sturgis and Carlsen to support her contention that "the white employees were immediately returned to their regular shifts," (Doc. # 32 at 3), but neither deposition actually establishes this fact.

Carlsen's deposition, for instance, is equally unhelpful in determining whether the other employees were similarly situated:

> Q:   And Danielle was the only black employee involved in this situation, correct?
>
> A:   She was the only black one who did not show, yes.
>
> Q:   The other employees that did not show were white, correct?
>
> A:   I don't know who the employees were at this point, so I couldn't tell you.
>
> Q:   Okay.  I think Kayla Stahl was one of them?
>
> A:   She's Cuban.
>
> Q:   Okay. Thatchi?
>
> A:   She's Spanish.  Spanish or Indian, something.
>
> Q:   Okay. And I can't remember the other person's name. Oh, no. I can't remember the other one. Okay. But anyway, if they were all sent home and told that they could not return to work until they met with you--
>
> A:    Right.
>
> Q:   --then that would seem to suggest that they were all somewhat equal, I guess, in that performance or they were all having problems with tardiness and/or unexcused absences?
>
>                          * * *
>
> A:   I believe they all were having issues at the time.

> Q:   And after they met with you, were they put
>      back on their shifts?
>
> A:   I don't recall.  Honestly, I don't recall.

(Carlsen Dep. Doc. # 32-2 at 3-4).  Sturgis, like Carlsen
and Spence, testified that he cannot remember how many or
which employees did not show up for work on January 29,
2011.  (Sturgis Dep. Doc. # 32-5 at 2).

Furthermore, even if the record evidence definitively
established the identities of all three employees who had
been absent on January 29, 2011, the record remains devoid
of any evidence relating to the respective work histories
of these employees.   The Court cannot discern, for
instance, whether these employees had been disciplined
prior to this incident, as Spence had, or whether their
employee records similarly contained written warnings of
excessive tardiness or absences.   Carlsen's vague
recollection that "they all were having issues at the time"
falls far short of demonstrating that any two BHTT
employees should be considered similarly situated for
purposes of this case.   See Knight, 330 F.3d at 1318
(finding that two employees were not similarly situated
where one employee's "documented performance and tardiness
problems were much worse than [the other's] in both number

and nature," and considering the relative improvement of each employee's disciplinary history over time). Accordingly, Spence has failed to establish that these employees were similarly situated for purposes of evaluating their allegedly different treatment for the January 29, 2011, incident.

Spence also alleges disparate treatment relating to an incident in which Spence "received a call [at work] from a white co-worker who indicated that she was experiencing car problems and could not get to work." (Doc. # 32 at 4). During her lunch break, Spence allegedly drove to pick up the co-worker and was late returning to work. (Id.; Spence Dep. Doc. # 32-2 at 8). Spence claims that, although Spence's white co-worker was likewise late for the beginning of her shift, Spence was reprimanded for being late while the white employee was not. (Doc. # 32 at 4; Spence Dep. Doc. # 32-3 at 8). Again, Spence fails to provide any evidence to assist the Court in determining whether Spence and this other tardy employee were similarly situated.

Likewise, with regard to the incident in March of 2011 which resulted in a discipline report and Spence's alleged termination for leaving her shift early, the Court notes

that Spence's general allegations in the EEOC Charge and Complaint that "it was common practice amongst hostesses and servers to leave approximately 10 minutes prior to the end of their shifts," (Doc. # 1 at 5), is insufficient to demonstrate that these other hostesses were similarly situated to Spence.[3]  Spence has not identified another employee who engaged in this activity and subsequently received more favorable treatment than Spence.

Without any evidence regarding the comparator employees' individual work histories (indeed, the Court lacks any employment information whatsoever regarding these other BHTT employees), the Court cannot find that these other employees were similarly situated to Spence. Accordingly, Spence has failed to establish a prima facie case of discrimination with regard to the disciplinary actions alleged.

Spence additionally alleged in the Complaint that BHTT's failure to promote her to the position of server constituted discrimination in violation of Title VII (Doc. # 1 at 4-6), although Spence declined to expound on this allegation in her response to the Motion for Summary

---

[3] The Court therefore finds that the dispute on the record as to whether Spence was terminated or voluntarily quit her job is not a dispute of material fact.

Judgment.  In any event, the same evidentiary deficiencies undermine this contention.  "In the failure-to-promote context, the prima facie case consists of showing these elements: (1) that the plaintiff belongs to a protected class; (2) that she applied for and was qualified for a promotion; (3) that she was rejected despite her qualifications; and (4) that other equally or less-qualified employees outside her class were promoted." Brown v. Ala. Dept. of Transp., 597 F.3d 1160, 1174 (11th Cir. 2010).  Although Spence claims to have witnessed a white co-worker "filling out a training form to become a server," (Spence Dep. Doc. # 32-3 at 2), Spence offers no evidence demonstrating that the white co-worker was equally or less qualified for the position of server nor any other evidence showing that BHTT's decision to promote this other employee was motivated by racial discrimination.

Furthermore, although Spence testified that she "had asked numerous times about [her] position as moving up and becoming a server," (id.), Spence has offered no evidence demonstrating that she was qualified for a promotion.  In fact, Spence testified that Carlsen responded to her request to become a server by advising that, before she could be promoted, she "needed to be on time" and to

20

exhibit more reliability in her current position. (Spence Dep. Doc. # 26-4 at 1). Accordingly, Spence has failed to establish a prima facie case in the context of her failure-to-promote claim.

Additionally, even if Spence had established a prima facie case of discrimination for the employment actions described herein, summary judgment for BHTT would still be appropriate because BHTT has provided legitimate, nondiscriminatory reasons for each adverse employment decision challenged by Spence, and Spence has failed to show that those reasons were pretextual. "To demonstrate pretext, the plaintiff must show both that the employer's proffered reason is false, and that discrimination was the real reason." Connor v. Bell Microproducts-Future Tech, Inc., 492 F. App'x 963, 966 (11th Cir. 2012). The BHTT Employee Handbook, which Spence signed in acknowledgement of receipt in June of 2010,[4] states that "a poor attendance

---

[4] In response to the Motion for Summary Judgment, Spence argues that, even though she admittedly signed to acknowledge her receipt of the Employee Handbook in June of 2010, she was "unaware of the policies of BHTT because the Employee Handbook and other documents requiring her signature were not reviewed." (Doc. # 32 at 5). This argument is apparently intended to persuade the Court that Spence was unaware, throughout her employment, that punctuality and attendance were required of BHTT hostesses. The Court finds this argument both unpersuasive and

record or excessive lateness may lead to disciplinary action up to and including termination." (Handbook Doc. # 26-5 at 4-5). Spence herself admits that she "had the write-ups" described above, and that she "was not on time once or twice." (Spence Dep. Doc. # 32-3 at 10). Spence has accordingly failed to demonstrate that BHTT's proffered reasons for issuing Spence's disciplinary reports were pretextual and that discrimination was the real reason for these actions.

## IV.  **Conclusion**

Spence claims to have been singled out as the only employee disciplined for the abovementioned instances of tardiness and unexcused absences from work. She also claims to have been wrongfully denied a promotion on the basis of her race. Spence, however, has failed to present any evidence of another employee who, for instance, had accumulated multiple written disciplinary action reports, as Spence had (Reports Doc. ## 26-7 at 7-11; 26-8 at 1), or who had been advised by a supervisor that improved reliability and punctuality would be necessary prerequisites to a promotion, as Spence had (Spence Dep.

---

inconsequential, as Spence has nonetheless failed to establish a prima facie case of discrimination.

Doc. # 26-4 at 1).  Indeed, Spence offers no evidence as to the respective disciplinary histories of the comparators she attempts to identify.

Because Spence has failed to establish that other, similarly situated employees outside her protected class were treated more favorably, and thus has failed to establish a prima facie case of discrimination, the Court finds that summary judgment for BHTT is appropriate. Furthermore, even if Spence had successfully identified such similarly situated employees who were treated more favorably, Spence nonetheless has failed to demonstrate that the legitimate, nondiscriminatory reasons offered by BHTT for Spence's discipline, lack of promotion, and ultimate termination were pretextual.  The Court therefore grants BHTT's Motion for Summary Judgment.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Defendant's Dispositive Motion for Summary Judgment (Doc. # 26) is **GRANTED.**  The Clerk is directed to enter judgment in favor of Defendant.

(2) The Clerk is further directed to terminate any pending motions and thereafter to **CLOSE THIS CASE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 15th day of July, 2013.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record